UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 10-313-04 (DWF/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Seth Paul Neel,** | **AND ORDER** |
| Defendant. | |

Tom Hollenhorst, Assistant United States Attorney, for Plaintiff.
David Izek for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 6, 2011 on Defendant's Motion to Suppress Evidence Obtained Through Search and Seizure (ECF No. 196). At the hearing, the Government submitted two exhibits into evidence.[1] The parties have since submitted post-hearing briefs. (ECF Nos. 225 and 227.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, the Court recommends Defendant's Motion to Suppress Evidence Obtained Through Search and Seizure (ECF No. 196) be **DENIED**.

## I.   FINDINGS OF FACT

**Search Warrant Affidavit**

At the hearing, the Government submitted a search warrant for a specific addresses on Webster Avenue in Perris, California. (Gov't Ex. 1.) Internal Revenue Service Special Agent Jason

---

[1] Government Exhibit 1 is an "Affidavit for Search Warrant" for a building on Webster Avenue in Perris, California; Government Exhibit 2 is a search warrant and return for a building on Webster Avenue in Perris, California..

Ohlde served as the affiant for the warrant application. (Gov't Ex. 1.) The affidavit recites the following events in support of probable cause to search. (Gov't Ex. 1.)

Special Agent Ohlde participated in an investigation of a criminal conspiracy between Jesus Mendoza ("Mendoza") and various associates, including Defendant, involving distribution of cocaine, methamphetamine, and marijuana and a conspiracy to conceal and launder the proceeds of these illegal activities. (Gov't Ex. 1 ¶ 4.) Special Agent Ohlde states that based upon the investigation, it is believed that Mendoza utilizes a courier to transport cash to out of state sources of controlled substances. *Id.* The courier then transports controlled substances from Texas and California back to Mendoza in Minnesota. *Id.*

On April 13, 2010, Wisconsin State Patrol stopped a semi-truck driven by an individual identified in the affidavit as source of information #4 ("SOI#4"). (Gov't Ex. 1 ¶ 11.) The truck was found to contain $499,290.00 U.S. currency in a safe. *Id.* SOI#4 agreed to cooperate with law enforcement and provided information about Mendoza. *Id.* SOI#4 worked for a transport company located in Ham Lake, Minnesota, and stated that he had been a money and controlled substance courier for Mendoza since approximately February, 2009. *Id.* SOI#4 stated that Mendoza would provide him with "an undisclosed amount of U.S. currency" in a locked safe. *Id.* Mendoza would then fly to California and meet SOI#4 to pick up the safe. *Id.* After SOI#4 picked up his legitimate freight in California, Mendoza would direct SOI#4 to a location where Hispanic males would load the truck with 55-gallon drums. *Id.* SOI#4 stated he believed these drugs to contain marijuana because he saw Mendoza remove marijuna from similar barrels that SOI#4 had transported to Minnesota. *Id.* SOI#4 stated that he had transported controlled substances for Mendoza on at least seven occasions. *Id.*

On April 27, 2010, law enforcement recorded a telephone conversation between SOI#4 and Mendoza regarding the April 13, 2010, traffic stop. (Gov't Ex. 1 at ¶ 16.) Mendoza directed SOI#4 not to cooperate with law enforcement. *Id.* Mendoza stated that the police would ask SOI#4 how many trips he had made and then would, ". . .end up charging me with how many times you done it." Mendoza stated that "they" would add up all of the trips "throughout the years." *Id.*

SOI#4 told law enforcement that he had once unloaded barrels of what he suspected to be marijuana at the end of the driveway of Mendoza's property in Prescott, Wisconsin. (Gov't Ex. 1 ¶ 12.) In June of 2009, a concerned citizen, identified in the affidavit as SOI#2, reported to police having seen a semi-truck unloading 55 gallon drums at Mendoza's house, located in a development east of Prescott, Wisconsin. (Gov't Ex. 1 ¶ 9.) SOI#2 provided law enforcement with the license plate number of the truck, which was confirmed to be registered to a transport company in Ham Lake, Minnesota. *Id.*

SOI#4 identified Defendant as a person involved in Mendoza's drug distribution activities. (Gov't Ex. 1 ¶ 13.) SOI#4 stated barrels of controlled substances had been loaded into his truck at Defendant's shop, "Epic Motors." *Id.* SOI#4 stated that on two occasions he observed Defendant and Defendant's business partner "Bret" load marijuana into barrels at Epic Motorsports' "new location located just off interstate 215 in Perris, California." (Gov't Ex. 1 ¶ 38.) SOI#4 stated that Defendant and Bret "put transmission grease around the seals of the barrels to help reduce the smell of the marijuana." *Id.* SOI#4 described Bret as a 40 year old white male about 5'6" tall. (Gov't Ex. 1 ¶ 38.) Law enforcement confirmed through records obtained from Epic Motorsports that Defendant was the manager. (Gov't Ex. 1 ¶ 27.) Law enforcement observed a car parked at Epic Motorsports, which was registered to a Bret Franklin Allan, who matched SOI#4's description of

3

Defendant's business partner "Bret." (Gov't Ex. 1 at ¶ 16.)

SOI#4 described a trip in approximately April, 2009, in which he dropped off two pieces of luggage filled with money to Mendoza and Defendant at a restaurant in Ontario, California. (Gov't Ex. 1 ¶ 15.) SOI#4 then loaded three or four barrels at Defendant's shop, which he transported to Minnesota. *Id.* He dropped off the barrels at the home of a man named "Larry" in Woodbury. *Id.* Law enforcement found the directions SOI#4 gave to "Larry's" residence to match the former address of Larry Sheehan. *Id.* Larry Sheehan was identified as an associate of Mendoza by SOI#5, who provided accurate information in the past to law enforcement concerning Mendoza, and who Special Agent Nye believed to be reliable. *Id.*

SOI#4 stated that in July, 2009, he delivered a safe to Mendoza and Defendant in Ontario, California. (Gov't Ex. 1 ¶ 14.) He then went to "what he believed to be Neel's new shop located in Perris, California." *Id.* There were no barrels, but Defendant entered SOI#4's truck carrying a large duffle bag and stated "there was no 'weed' to haul" and that Defendant was riding along to Wisconsin. *Id.* Upon arrival at Mendoza's residence in Prescott, Wisconsin, Defendant carried the duffle bag into the house where it was opened. *Id.* SOI#4 believed the contents of the duffle bag to be cocaine and described them as "thirteen shrink wrapped packages that were about the size of a smaller phone book." *Id.* Special Agent Ohlde states that based on his conversations with the Drug Enforcement Agency agent assigned to the case, and his own experience, he believes "SOI#4's description of the contents of the duffle bag to be consistent with thirteen compressed bricks of cocaine, each of which likely being one kilogram of cocaine." *Id.*

Banking records revealed that between May 27, 2009 and July 21, 2009, eight currency deposits were made to the bank account of Epic Motorsports from Wells Fargo branches in Houston,

Texas and St. Paul, Maplewood, and Cottage Grove, Minnesota. (Gov't Ex. 1 ¶ 27.) IRS Special Agent Nye determined that Mendoza lives "near the location of the three Minnesota bank branches." *Id.* Additionally, when Mendoza was previously arrested on federal drug charges he provided information about a source of drugs in Houston, Texas, and his bank records show charges at a hotel in Houston, Texas in May, 2009. *Id.* Based on the foregoing, Special Agent Nye believed that Mendoza likely deposited the money into the Epic Motorsports account. *Id.*

The affidavit describes two traffic stops of vehicles occupied by Defendant. In August, 2009, the Riverside Police Department found Defendant and a female in a parked vehicle that smelled of marijuana. (Gov't Ex. 1 ¶ 23.) When police searched the vehicle they located one pound of marijuana, a handgun, and $49,000.00 U.S. Currency. *Id.* On August 18, 2009, police conducted another traffic stop of Defendant's vehicle. *Id.* Defendant was in the car with Mendoza, and a search of the car located $130,000.00 U.S. Currency. Mendoza was found to be in possession of "a document containing a list of names and numeric figures consistent with an account receivable ledger for drug debts." *Id.*

SOI#4 described assets owned by Mendoza, including a 1970 Chevrolet Monte Carlo SS that SOI#4 had last seen stored at Defendant's business in June of 2010. (Gov't Ex. 1 ¶ 17.)

Special Agent Ohlde states that based on the evidence in the affidavit he believes that evidence will be found at Epic Motorsports of illegal drug offenses and money laundering. (Gov't Ex. 1 ¶ 28.) Attachment B describes the items to be seized which include: U.S. currency in excess of $5,000; financial and business records, bank account information, cashier's checks, money orders, drafts, and other documents reflecting financial transactions of businesses operated by or pertaining to Defendant, Mendoza, and Epic Motorsports from January 1, 2009 to the present; controlled

substances; and containers used to store controlled substances.  (Gov't Ex. 1, Attach. B.)

Based upon the foregoing, United States Magistrate Judge Oswald Parada issued a search warrant for Epic Motorsports, located on Webster Avenue in Perris, California, on September 1, 2010.  (Gov't Ex. 2.) The search warrant return indicates that bank statements, business records, and 1-2 ounces of marijuana were recovered from the business on September 2, 2010 (Gov't Ex. 2.)

## II.   CONCLUSIONS OF LAW

### A.   Probable Cause Standard for Issuance of Search Warrants

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under well-established Fourth Amendment jurisprudence, a valid search warrant must be supported by an affidavit providing the signing judge with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236-39 (1983).  Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *See id.* at 238. A supporting affidavit that consists of bare conclusions or conclusory allegations cannot support a finding of probable cause. *Id.*  Veracity, reliability, and basis of knowledge are "highly relevant" in determining whether a supporting affidavit establishes probable cause. *Alabama v. White*, 496 U.S. 325, 328 (1990).

Still, because "reasonable minds" may differ as to whether a particular affidavit establishes probable cause, the Supreme Court has established a "good faith" exception to the warrant requirement, according great deference to a magistrate's probable cause determination.  *See United States v. Leon*, 468 U.S. 897, 914 (1984) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

The *Leon* Court established that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate" should be admissible in the prosecution's case in chief. *Leon*, 468 U.S. at 913.  On the contrary, if a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the *Leon* good faith exception to the warrant requirement does not apply. *Id.* at 922-23.

Additionally, whether probable cause exists depends on the totality of the circumstances. *See Gates*, 462 U.S. at 238; *United States v. Gabrio*, 295 F.3d 880, 882-83 (8th Cir. 2002).  In evaluating the existence of probable cause, courts do not consider each piece of information independently, but instead consider the cumulative meaning of all facts taken together.  *See United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002).

**B.     The search warrant was supported by probable cause.**

Defendant asserts that the search warrant in the instant case was issued without probable cause because the evidence in the search warrant was stale and because the affidavit was based on information from an informant who was not shown to be reliable.  (ECF No. 225 at 3-4.)

**1.     Staleness**

Defendant argues that because the last act referenced by date concerning Defendant in the affidavit occurred in August of 2009, thirteen months before the warrant was issued, the evidence is stale and no probable cause existed to search Defendant's business.  (ECF No. 225 at 3-4.)  The Government argues that a fair reading of the affidavit indicates that when SOI#4 was stopped transporting currency in April, 2010, he was on his way to pick up drugs from the same location where he had done so in the past, namely Defendant's business.  (ECF No. 227 at 6.)  The

Government also points out that SOI#4 saw Mendoza's Monte Carlo at Defendant's business in June of 2010.  (*Id.*)

"There is no bright-line test for determining when information in a warrant is stale. Instead, we must look to the particular circumstances of the case, including the nature of the crime involved." *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008).  The Eighth Circuit has held that where ongoing criminal activity is suspected, the passage of time is less significant a factor. *United States v. Morrison*, 594 F.3d 626, 631 (8th Cir. 2010).  "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." *Id.*  The Eighth Circuit has recognized that books and records are a type of evidence likely to be retained for some time. *See United States v. McNeil*, 184 F.3d 770, 777 (8th Cir. 1999).

The investigation described in the affidavit concerned an going narcotics operation. SOI#4 stated that he served as a courier of controlled substances for Mendoza seven times between February 2009 and his arrest on April 13, 2010. (Gov't Ex. 1 ¶ 11.) SOI#4 described at least three occasions on which drugs were picked up from Defendant at his business: the April 2009 trip when Defendant rode along with SOI#4 from California to Wisconsin carrying a duffle bag believed to contain cocaine and two occasions when SOI#4 saw Defendant and his business partner loading marijuana into barrels.  (Gov't Ex. 1 ¶ 14, 12.)  This indicates criminal activities of a continuous nature. Further, the warrant was seeking primarily the business records of Epic Motorsports, which Agent Ohlde believed would show that the business was being used to launder the proceeds of the drug distribution operation. (Gov't Ex. 1, Attach. B.)  Financial documents are likely to be retained for many years, therefore information regarding this type of evidence does not become stale as

8

quickly as other types of evidence. *See McNeil*, 184 F.3d at 77; *United States v. Abboud*, 438 F.3d 554, 573-74 (6th Cir. 2006) (three year old information pertaining to documents to be seized pursuant to warrant found not to be stale because records are typically retained for long periods of time). The Court finds that the evidence in the affidavit was not so stale as to defeat a finding of probable cause.

### 2. Reliability of Informant

Defendant further alleges that the affidavit is based primarily on information provided by SOI#4, an informant who had not provided reliable information in the past and whose claims were not corroborated. (ECF No. 225 at 4.) "A key issue in determining whether information provided by an informant is sufficient to establish probable cause is whether that information is reliable. An informant may establish the reliability of his information by establishing a track record of providing accurate information." *Id.*, citing *Illinois v. Gates,* 462 U.S. 213, 233 (1983). If the informant is previously unknown to law enforcement, "the informant's lack of a track record requires some independent verification to establish the reliability of the information." *Brown*, 49 F.3d at 1349, citing *United States v. Robertson,* 39 F.3d 891, 893 (8th Cir. 1994). "Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers." *Brown*, 49 F.3d at 1349, citing *Gates,* 462 U.S. at 241–45; *Draper v. United States,* 358 U.S. 307, 313 (1959); *Morales*, 923 F.2d at 625; *see also United States v. Marchena-Borjas*, 209 F.3d 698, 700 (8th Cir. 2000) ("The historical reliability of the confidential informant, his provision of descriptive information not easily discoverable, and the independent corroboration of his information by investigating officers together established probable cause for Marchena-Borjas's arrest.")

There is no evidence in the affidavit that SOI#4 had previously provided reliable information to law enforcement, however some of the information provided by SOI#4 was corroborated. SOI#4's work as a courier for Mendoza was corroborated by the recorded conversation between SOI#4 and Mendoza, in which Mendoza stated that he himself would be charged for all of SOI#4's trips "throughout the years." (Gov't Ex. 1 at ¶ 16.) SOI#4's statement that he once dropped 55 gallon drums of marijuana at the end of Mendoza's driveway in Prescott, Wisconsin was consistent with the report of SOI#2 made in June 2009. (Gov't Ex. 1 at ¶ 9, 12.) SOI#4 also described the address of "Larry," to whom he had delivered drugs, consistent with the address of Larry Sheehan who was identified by another confidential informant as an associate of Mendoza. (Gov't Ex. 1 at ¶ 15, 19.)

Specifically with regard to Defendant, law enforcement corroborated that he is the manager of Epic Motorsports, at the location described by SOI#4. (Gov't Ex. 1 ¶ 27.) Law enforcement also saw a car parked at Epic Motorsports, which was registered to a Bret Franklin Allan, who matched SOI#4's description of Defendant's business partner "Bret." (Gov't Ex. 1 at ¶ 16.) Defendant's association with Mendoza was corroborated by the August 2009 traffic stop, in which officers found $130,000.00 in U.S. Currency and found Mendoza to be in possession of what appeared to be a drug leger. (Gov't Ex. 1 at ¶ 23.)

The Court finds there was sufficient independent verification of information provided by SOI#4 to find that information reliable to support a probable cause determination. Additionally, even if the corroboration of SOI#4's information was not sufficient to find SOI#4 reliable, the warrant was not so facially lacking in probable cause as to preclude an executing officer from relying on it in good faith. *Leon*, 468 U.S. at 922-23.

The court finds that the affidavit in support of the search warrant contains sufficient evidence to support a finding of probable cause. SOI#4 described three occasions on which he picked up controlled substances for transport from Defendant's business, Epic Motorsports, and two occasions on which Defendant was present when SOI#4 dropped off large amounts of U.S. Currency to Mendoza. The affidavit further describes multiple currency deposits to Epic Motorsports' bank account, made outside the state of Defendant's business and residence, at banks near Mendoza's residence. The affidavit also describes traffic stops in which Defendant was found with one pound of marijuana and large amounts of U.S. Currency.

Based upon the totality of the circumstances and considering the cumulative meaning of all facts contained within the search warrant affidavit, the Court finds that there existed a "fair probability that contraband or evidence of a crime" would be found at Defendant's business, such that probable cause existed sufficient for the warrant to issue. Defendant's motion to suppress should be denied.

### III.     RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained Through Search and Seizure (ECF No. 196) be **DENIED**.

### IV.     ORDER

This matter is also before the Court on Defendant's Motion for Disclosure and to Make Informant Available for Interview (ECF No. 192). In its prior order (ECF No. 224), the Court granted the motion with regard to the informant identified as Source of Information #4 and took the motion under advisement with respect to other informants. The Government submitted a letter to

the Court in which it states that another informant was a witness to an event that will be presented at trial. The Court finds that because this informant witnessed an event, evidence of which will be offered at trial, the informant has evidence material to Defendant's defense and the informant must be disclosed under *Roviaro v. United States*, 353 U.S. 53, (1957).

Based upon the foregoing and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Disclosure and to Make Informant Available for Interview (ECF No. 192) is **GRANTED** with respect to the informant described in the Government's letter. The Government shall disclose the identity of this informant 14 days before trial.

DATED: April 28, 2011                                    *s/ Franklin L. Noel*
                                                         FRANKLIN L. NOEL
                                                         United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **May 12, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **May 12, 2011,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.